IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| PROFESSIONAL ORTHODONTICS ASSOCIATES, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 3:20-CV-1660-E |
| § | |
| CHASE BANK, § § | |
| Defendant. § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Fifth Amended Complaint. (Doc. 47). The Court considered the complaint, the motion to dismiss, Plaintiff's response, Defendant's reply, applicable portions of the record and applicable law. The motion should be, and therefore is, **GRANTED**.

### I.   Background facts

Plaintiff Professional Orthodontics Associates (POA) initiated this lawsuit in state court against Defendant "Chase Bank." Chase Bank removed the case to federal court on diversity grounds. Chase Bank's notice of removal asserts that "Chase Bank" was improperly named and that JPMorgan Chase Bank, N.A. is the appropriate defendant.

Upon removal, POA twice amended its complaint in response to a Court order that found the allegations of diversity jurisdiction in the First Amended Complaint to be insufficient. Chase Bank moved to dismiss the Second Amended Complaint under Rule 12(b). In response, POA filed a Third Amended Complaint. The Court later granted POA leave to file a Fourth Amended Complaint. Chase Bank moved to dismiss the Fourth Amended Complaint under Rules 12(b)(6)

and 12(b)(7). The Court granted that dismissal and allowed Plaintiff a fifth opportunity to replead. The following allegations are taken from the Fifth Amended Complaint, although they mirror the allegations in the Fourth Amended Complaint.

POA is a dental office that shut down because of coronavirus shelter-in-place orders. POA later reopened with funds from the Congressional Cares Act. POA alleges it "entered into a contract with Chase Bank to deposit funds and write checks, including payroll checks, to its employees." POA opened two bank accounts with Chase Bank. On June 9, 2020, POA had about $159,000 from the Cares Act on deposit with Chase Bank in its accounts. These funds were earmarked for payroll checks and payments to lenders. However, Chase Bank froze POA's two bank accounts, which resulted in the nonpayment of loans and employees' wages. POA representatives spoke to an assistant manager at Chase Bank to advise him of POA's predicament. Chase Bank refused to pay the lenders and continued to freeze the accounts.

POA's complaint alleges that a New Jersey entity, Pearl Delta Funding, LLC, was a creditor of POA's. Pearl Delta obtained an ex parte judgment against POA in a New York Nassau County Court in the amount of $60,287.19. POA had no notice of the hearing. Pearl Delta then filed a levy with Chase Bank in New York. "Chase Bank of Columbus, Ohio," who has numerous Texas locations, including POA's branch bank, honored the New York levy. POA alleges that Chase Bank converted its Cares Act funds by "paying off a New York judgment of $60,287.19, dated June 17, 2020 and by a payment less than one month later of $63,396.96 on July 15, 2020." POA alleges the amount of the judgment was $60,287.19, yet Chase Bank paid about $3,000 more than that amount. POA also alleges Chase Bank had no authority to pay any amount based on a New York levy that had no relationship to Texas.

Chase Bank removed the freeze on POA's accounts on July 17, 2020. At that time, POA had $48,256.24 available in its accounts, which was not enough to save the business. POA closed its doors. POA alleges Chase could have deposited the disputed funds into the registry of the court or timely distributed the excess funds. POA asserts claims for violations of the Deceptive Trade Practices Act, breach of contract, and conversion. In its motion to dismiss, Chase Bank alleges that POA's claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678.

## III.    Analysis

POA brings three causes of action against Chase Bank: (1) breach of implied warranty or breach of contract; (2) violation of Texas Deceptive Trade Practices Act (DTPA); and (3) conversion. POA failed to state a claim upon which relief can be granted for any of these three claims.

A.  POA failed to state a claim for breach of implied warranty or breach of contract.

i.  POA failed to state a claim that Chase Bank breached an implied warranty.

The Court has located one type of implied warranty in the service transaction context—a limited implied warranty to "repair or modify existing tangible goods or property in a good and workmanlike manner." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987).

> Before a court may judicially impose a new implied warranty, two factors must be considered: (1) there must be a demonstrated need for the warranty, i.e., the plaintiff must be without adequate remedies to redress the alleged wrong; and (2) the implied warranty should extend only to services provided to remedy defects existing at the time of the relevant consumer transaction.

*Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 239 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("DCV has neither argued, nor proven, that damages for its claims of negligence, breach of contract, or conversion, would not provide an adequate remedy to redress the wrongs committed by the bank. We decline to recognize an implied warranty of 'reasonably proficient and safe and sound banking services' as requested by DCV."). Here, POA argues that Chase Bank contracted with POA "to provide banking services, including checking services, to POA and, in doing so, impliedly warranted to POA that it would abide by Chapter 35 of the Texas Civil Practice and Remedies Code requiring that foreign judgments be domesticated in Texas in order to be enforceable in Texas." (Doc. 46, ¶ 32). The Court rejects this argument.

POA fails to provide factual or legal support, in its complaint or response to Chase Bank's motion to dismiss, that would enable this Court to draw that conclusion. Additionally, the facts

that POA alleges do not involve repairing or modifying "existing tangible goods or property in a good and workmanlike manner." *Melody*, 741 S.W.2d at 354. Thus, the implied warranty for repairing tangible goods or property in a workmanlike manner does not apply. Finally, other adequate remedies exist for POA to pursue its grievance against Chase Bank, such as POA's claims for breach of contract and conversion. Therefore, the Court declines to find an implied warranty requiring Chase Bank to "abide by Chapter 35 of the Texas Civil Practice and Remedies Code" before complying with a different state court's order.

          ii.      POA failed to plausibly plead that Chase Bank breached the contract.

Under Texas law, "the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). POA's argument for breach of contract is identical to its argument for breach of an implied warranty. ((Doc. 46, ¶ 32–40) (arguing Chase Bank breached its contractual obligations by complying with a New York state court order without first "abid[ing] by Chapter 35 of the Texas Civil Practice and Remedies Code requiring that foreign judgments be domesticated in Texas in order to be enforceable in Texas."). The Court rejects this argument.

Again, POA fails to provide factual or legal support, in its complaint or response to Chase Bank's motion to dismiss, that would enable this Court to draw that conclusion. Specifically, POA fails to allege that any clause in the contract obligates Chase Bank to certify the New York state court judgment in a Texas court before complying with the New York state court's order. Nor does Chapter 35 of the Texas Civil Practice and Remedies Code place such an obligation on Chase

Bank. *See generally* Tex. Civ. P. Rem. Code 35. POA failed to plead facts that show Chase Bank breached the contract.

> B. POA failed to state a plausible claim that Defendant violated the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA).

"The elements of a valid DTPA claim are (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damage." *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2016) (citations omitted). Here, POA argues Chase Bank violated DTPA "because Defendant engaged in false, misleading, and deceptive acts and/or practices that [Plaintiff] relied on to its detriment." (Doc. 47, ¶ 22). The Court rejects this argument.

POA's alleged facts are too vague to be plausible. POA alleges the following regarding its DTPA claim:

> Specifically, Defendant, acting through its agents, servants and/or employees who themselves were acting within their actual or apparent authority and/or within the course and scope of their employment, did or ratified the following false, misleading or deceptive acts or practices in violation of the DTPA:
>
> (a) Advertising goods or services with the intention not to sell them as advertised; and/or
>
> (b) Failing to disclose information concerning goods or services which was known by Defendant at the time it contracted with POA with the intention to induce POA into a transaction POA would not have entered in had the information been disclosed.

(Doc. 47, ¶ 22). These allegations boil down to a claim of fraudulent inducement. *See IBM v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019) (citation omitted) ("In a fraudulent-inducement claim, the 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it. The plaintiff's 'reliance on the false

promise 'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise.").

      i.      Because POA's claim here is based on its allegations that Defendant fraudulently induced it into the contract, POA must meet the heightened pleading standard under Rule 9(b).

Rule 9(b) applies to all allegations of fraud whether they are part of a claim for fraud or not. *See* Fed. R. Civ. P. 9(b); *see also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Under Rule 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Wallace v. Tesoro*, 796 F.3d 468, 480 (5th Cir. 2015) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)).

POA's complaint does not specify any of the particulars required under Rule 9(b). POA does not specify the contents of the statements, when the statements were made, where the statements were made, who made these allegedly false statements, or what he gained thereby. (Doc. 47, ¶ 22–30). Without this specific information, POA's DTPA claim must be dismissed. *See, e.g.*, *7-Eleven Inc. v. Puerto Rico-7 Inc.*, No. 3:08-CV-00140-B, 2008 U.S. Dist. LEXIS 947664, 2008 WL 4951502, at *4–5 (N.D. Tex. Nov. 19, 2008) (dismissing defendant's counterclaims for fraud where defendant failed to plead the "who, what, when, where, and how.").

    C.  POA failed to state a plausible claim for conversion.

To state a claim for conversion under Texas law, a plaintiff must plead four elements: (1) the plaintiff owned, possessed, or had the right to immediately possess the property; (2) the defendant unlawfully and without authorization assumed and exercised control over the property

to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded the return of the property; and (4) the defendant refused to return the property. *Arthur W. Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). Here, POA argues the following regarding its conversion claim:

> POA (1) owned the funds deposited into its account at Chase Bank, (2) Chase Bank without authorization assumed and exercised control over the POA funds deposited in its Texas Chase Bank account, (3) POA in person demanded return of the POA funds and to unfreeze the POA accounts, and (4) finally Chase Bank paid over funds to Delta Funding and refused to return or release POA's funds to POA.

(Doc. 37, ¶ 43); *see also* (Doc. 37, ¶ 19). The Court rejects this argument.

POA's pleading fails to satisfy the second element of a conversion claim. POA does not specify how Chase Bank's compliance with the New York levy was unlawful. In POA's response to Chase Bank's motion to dismiss, it points to the affidavit of Charles Williams to further bolster its claim for conversion. (Doc. 50, ¶ 21) ("The affidavit of Dr. Williams has clearly established that Chase Bank converted POA funds by paying POA funds on deposit with Chase Bank of Desoto to Delta Funding."). The affidavit does not "clearly" establish a claim for conversion because the issue here is not a lack of factual specificity. The issue is that POA fails to show, as a legal matter, that Chase Bank's compliance with the New York court's levy was unlawful. *See Tifford*, 562 F.3d at 705 (the second element of a conversion claim requires that "the defendant *unlawfully* and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner[.]") (emphasis added).

The Court is unaware of any law that requires an entity doing business in both Texas and New York to obtain a Texas court's approval before complying with a New York court's order. Plaintiff points only to Chapter 35 of the Texas Civil Practice and Remedies Code. Again, the

Court rejects Plaintiff's legal conclusion that Chapter 35 of the Texas Civil Practice and Remedies Code imposes such a requirement.

### IV.     Conclusion

For the above reasons, the Court **GRANTS** Defendant's motion to dismiss as to all of Plaintiff's claims. Plaintiff has amended its pleadings five times and presents no indication that it will be able to plausibly state a claim if given a sixth opportunity. Because Plaintiff has again failed to meet the pleading standards, Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE.**

**SO ORDERED:** September 27, 2022.

_____
Ada Brown
UNITED STATES DISTRICT JUDGE